**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| VITO DeBENEDICTIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 10 C 922 |
| v. | ) | |
| | ) | |
| BLITT & GAINES, | ) | JUDGE DAVID H. COAR |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Vito DeBenedictis ("Plaintiff" or "DeBenedictis") brings this action against Blitt & Gaines ("Defendant" or "B&G") alleging violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq*. Defendant moves to dismiss this action for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1). For the reasons stated below, Defendant's motion is GRANTED.

### BACKGROUND

DeBenedictis filed his initial complaint in this case on February 10, 2010.[1] On May 11, 2010, this Court granted B&G's motion to dismiss for failure to state a claim under Rule 12(b)(6) and dismissed DeBenedictis's first amended complaint without prejudice. DeBenedictis filed his second amended complaint on May 26, 2010. The following facts, drawn from DeBenedictis's second amended complaint, are accepted as true for the purpose of resolving B&G's motion to dismiss. *See Long v. Shorebank Dev. Corp.*, 182 F.3d 548, 554 (7th Cir. 1999).

---

[1] Apparently by mistake, DeBenedictis first filed a complaint unrelated to either Blitt & Gaines or the instant controversy. On the same date, DeBenedictis filed its first amended complaint, which superseded his first complaint.

- 1 -

Blitt & Gaines ("B&G") is a law firm whose principal business involves collecting debts owed to third parties. On behalf of its client, CreditOne, LLC, B&G filed a state-court action against DeBenedictis, seeking to collect a $7,445.55 debt allegedly owed by DeBenedictis to CreditOne. DeBenedictis received the summons and complaint related to this lawsuit in approximately May 2009. When DeBenedictis and B&G convened for court status hearings on several occasions, they discussed the possibility of reaching a settlement agreement. Specifically, on May 12, 2009, DeBenedictis appeared in state court for an initial status hearing and spoke with B&G about resolving the lawsuit. DeBenedictis informed B&G that he was concerned about being laid off from his job and that he was unable to pay off his debt in full. When DeBenedictis asked B&G whether it would agree to settle the case for a reduced amount, B&G responded by explaining that it would need to contact CreditOne to seek approval for a settlement. Aware that the parties were engaged in settlement discussions, the court continued the case until June 16, 2009 for a status hearing regarding the parties' settlement efforts.

As planned, both parties appeared in court on June 16, 2009. At that point, DeBenedictis informed B&G that he had been laid off from his employment and reiterated his desire to resolve the lawsuit for a reduced amount. Apparently unaware of the parties' conversation during the May 12 status hearing, B&G's representative explained that he needed to contact CreditOne to seek approval for a settlement. The court continued the case until August 4, 2009. Both parties appeared again on that date. At the third status hearing, DeBenedictis again expressed his desire to settle the lawsuit for a reduced amount, and B&G again responded by explaining that it had to seek approval from CreditOne. Additionally, B&G expressed willingness to work with DeBenedictis to secure CreditOne's approval and set up a payment plan that would allow

DeBenedictis to begin paying down his debt. The court, in turn, continued the lawsuit until November 17, 2009 for trial.

On October 28, 2009, B&G called DeBenedictis and advised him that CreditOne had approved a reduced settlement of $4,000. DeBenedictis requested an opportunity to discuss the proposed settlement with his wife and said that he would follow up with B&G. Several days later, on November 2, 2009, DeBenedictis called B&G to express his agreement to settle the lawsuit for $4,000. He requested to speak with the representative with whom he had previously spoken, but he was told that that representative was unavailable. DeBenedictis left his name and phone number and requested that B&G return his call.

On November 5, 2009, Melissa Vela ("Vela") called DeBenedictis on behalf of B&G. She reiterated that CreditOne had given B&G the authority to settle DeBenedictis's debt for $4,000. She also explained that, if DeBenedictis "did not make payments according to the payment plan then [B&G] would proceed on the lawsuit and secure a judgment for the full amount of the debt allegedly owed by [DeBenedictis]." (Compl. ¶ 39.) (In his complaint, DeBenedictis does not specify the terms of the payment plan, nor does he state explicitly that the parties had, in fact, established a payment plan.) During his phone conversation with Vela, DeBenedictis agreed to settle the debt for $4,000. Vela, in turn, requested that DeBenedictis confirm the following statement: "On November 5, 2009, you, Vito DeBenedictis, are accepting a settlement of $4,000." (Compl. ¶ 42.) Complying with Vela's request, DeBenedictis confirmed that he agreed with her statement. Based on his conversation with Vela, DeBenedictis believed that he had reached a settlement resolving B&G's lawsuit against him and that B&G would no longer pursue this lawsuit.

As a result of his understanding that he had settled his debt with B&G, DeBenedictis did not appear in court on November 17, 2009, the date that had been set for his trial. DeBenedictis believed that B&G would inform the court that the lawsuit had been settled. However, to DeBenedictis's surprise, B&G appeared in court on November 17, 2009 and secured an ex parte judgment against him for $7,455.55 plus costs. At no time prior to November 17, 2009 did B&G advise DeBenedictis either that CreditOne would not honor the parties' settlement agreement or that B&G planned to proceed with the lawsuit and seek a judgment against DeBenedictis.

DeBenedictis alleges that B&G violated the FDCPA by making false and misleading statements in connection with the parties' settlement discussions and using unfair and/or unconscionable means to collect DeBenedictis's debt. DeBenedictis claims that, as a result of B&G's violations, he "has suffered, and continues to suffer, personal humiliation, embarrassment, mental anguish and emotional distress." (Compl. ¶ 60.)

**LEGAL STANDARD**

Federal Rule of Civil Procedure 12(b)(1) requires dismissal of claims over which the court lacks subject matter jurisdiction. When reviewing a motion to dismiss under Rule 12(b)(1), the court accepts all well-pleaded allegations in the plaintiff's complaint as true and draws all possible inferences in favor of the plaintiff. *Long*, 182 F.3d at 554. "The district court may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Id.* (citation and quotation marks omitted). The burden of proof under Rule 12(b)(1) rests with the party asserting jurisdiction. *United Phosphorus, Ltd. v. Angus Chem. Co.*, 322 F.3d 942, 946 (7th Cir. 2003).

## ANALYSIS

B&G moves to dismiss DeBenedictis's complaint, arguing that this Court lacks subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) because DeBenedictis's claim for violation of the FDCPA is barred by the *Rooker-Feldman* doctrine. The *Rooker-Feldman* doctrine derives its name from two Supreme Court decisions, *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923) and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983). Under *Rooker-Feldman*, lower federal courts lack subject matter jurisdiction over cases brought by state-court losers effectively seeking to set aside state-court judgments. *Gilbert v. Ill. State Bd. of Educ.*, 591 F.3d 896, 900 (7th Cir. 2010) (citing *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)). This jurisdictional bar to review of state-court judgments operates "no matter how erroneous or unconstitutional the state court judgment may be." *Kelley et al. v. Med-1 Solutions, LLC et al.*, 548 F.3d 600, 603 (7th Cir. 2008) (quoting *Brokaw v. Weaver*, 305 F.3d 660, 664 (7th Cir. 2002)) (internal quotation marks omitted). Rather than pursuing relief in federal court, litigants seeking review of state-court judgments "must follow the appellate process through the state court system and then directly to the United States Supreme Court." *Kelley*, 548 F.3d at 603.

*Rooker-Feldman* applies not only to claims that were directly raised in state court, but also to claims that are "inextricably intertwined" with a state-court judgment. *See id.* (citing *Feldman*, 460 U.S. at 482 n.16). Although the Seventh Circuit has recognized that "inextricably intertwined" is a "somewhat metaphysical concept," *Taylor v. Fed. Nat'l Mortgage Ass'n*, 374 F.3d 529, 533 (7th Cir. 2004), "the crucial question is whether the district court is in essence being called upon to review the state-court decision." *Id.* (quoting *Ritter v. Ross*, 922 F.2d 750, 754 (7th Cir. 1993)) (internal quotation marks omitted).

B&G argues that the Seventh Circuit's decision in *Kelley et al. v. Med-1 Solutions, LLC et al.* governs this case and prevents the Court from exercising jurisdiction over DeBenedictis's claim. The Court agrees. In *Kelley*, the federal plaintiffs brought an FDCPA claim against debt collectors who obtained judgments against them in state court. *Kelley*, 548 F.3d at 601-02. The federal plaintiffs claimed that the state court wrongly awarded attorneys' fees after the debt collectors misrepresented their entitlement to such fees. *Id.* at 602. The debt collectors' alleged misrepresentations, argued the federal plaintiffs, constituted a violation of the FDCPA properly within the federal court's jurisdiction. *Id.* In order to avoid the effect of *Rooker-Feldman*, the plaintiffs argued that they sought "only to remedy defendants' deceptive *representations* and *requests* related to attorney fees, and not the state court judgments granting those requests." *Id.* at 604 (emphasis in original). The Seventh Circuit rejected the plaintiffs' characterization of their lawsuit, explaining that "[b]ecause defendants needed to prevail in state court in order to capitalize on the alleged fraud, the FDCPA claims that plaintiffs bring ultimately require us to evaluate the state court judgments." *Id.* at 605. Concluding further that it "could not determine that defendants' representations and requests related to attorney fees violated the law without determining that the state court erred in issuing judgments granting attorney fees," the Seventh Circuit held that *Rooker-Feldman* barred jurisdiction. *Id.* at 605.

Here, DeBenedictis insists that he does not seek to challenge the state court's judgment; however, that is exactly what he seeks to do. DeBenedictis complains, in essence, that B&G made misrepresentations that misled him into believing he did not need to attend court on November 17, 2009, he therefore failed to attend court, and in his absence, B&G obtained a judgment for the full amount of DeBenedictis's debt, despite the parties' prior agreement to settle the matter outside of court for a fraction of the actual debt. Under *Kelley*, DeBenedictis's

claim that B&G made misrepresentations in violation of the FDCPA is "inextricably intertwined" with the state-court judgment such that *Rooker-Feldman* bars federal jurisdiction. *See id.* at 603-605. But for the state-court judgment entered in DeBenedictis's absence, B&G could not have capitalized on any of its alleged misrepresentations, and DeBenedictis would have suffered no injury. *See id.* at 605. To evaluate the alleged misrepresentations that led to the state-court judgment against DeBenedictis, the Court would ultimately have to opine on the propriety of the state-court judgment itself. That is exactly what *Rooker-Feldman* forbids.

Attempting to avoid *Rooker-Feldman*, DeBenedictis argues that he challenges the manner in which B&G secured the state-court judgment—i.e., through misrepresentations designed to exclude him from court—and not the judgment itself. However, the Seventh Circuit rejected precisely this distinction in *Kelley* after noting that "plaintiffs carefully craft their argument" so that their lawsuit purports to challenge defendants' misrepresentations, and not the state-court decision that resulted from those misrepresentations. *Id.* at 604. The logic *Kelley* used to defeat the plaintiffs' argument applies here: If the Court concluded that B&G made misrepresentations in violation of the FDCPA, that conclusion would inevitably disturb the state-court judgment, which relied upon those misrepresentations. To prevent this result, which *Rooker-Feldman* prohibits, the Court rejects DeBenedictis's attempt to distinguish its attack on B&G's alleged misrepresentations from a challenge to the state-court judgment itself. Like the plaintiffs in *Kelley*, DeBenedictis falls squarely within the category of plaintiffs "that *Exxon Mobil* anticipates and guards against: state court losers, who, in effect, are challenging state court judgments." *Id.* at 605. Because DeBenedictis's FDCPA claim is "inextricably intertwined" with a state-court judgment, the *Rooker-Feldman* doctrine bars the Court from exercising

jurisdiction over this matter. Accordingly, B&G's motion to dismiss DeBenedictis's complaint pursuant to Fed. R. Civ. P. 12(b)(1) is GRANTED.

## CONCLUSION

For the reasons stated above, B&G's motion to dismiss DeBenedictis's complaint for lack of subject matter jurisdiction is GRANTED.

Enter:
/s/ David H. Coar

_____
David H. Coar
United States District Judge

**Dated:** July 19, 2010